Totten, J.,
delivered the opinion of the court.
The action is assumpsit, in the circuit court of Campbell, on a surgeon’s bill. The judgment wab for the plaintiff, and the defendant, Alder, who is sued as administrator of Thomas McLain, fyas appealed in error to this court.
It appears that a son of Thomas McLain had fractured his arm, and from mal-treatment, or other cause, mortification of the limb ensued, and to save his life it became necessary to amputate the limb. The operation was performed by Doctor Maupin, with the aid and assistance of Doctor Buckley, the plaintiff in this suit. The surgical instruments employed for the occasion, were a “large butcher knife, of good torn- *70 per and metal,” ground, honed and strapped to a very sharp edge, and a carpenter’s sash saw, the teeth of which were as “shai’p and fine” as those of an amputating saw. The operators, though professional, had but little experience in surgery, as may readily be inferred from the fact, that they had not provided themselves with the usual instruments suited to their vocation. The operation, however, appears to have been well performed, and the patient, under a proper treatment, soon recovered.
Exceptions are here taken to the instructions given by the court to the jury.
The court charged the j ury to the effect: that if the operation was of service to the patiént, and he did well and recovered, the surgeon was entitled to compensation, though it was not performed with the highest degree of skill, or might have been more skilfully performed by others. But, that, if the operation were so unskilfully performed, as to be of no service to the patient, the surgeon would not be entitled to recover.
We are not prepared to say, that this charge is erroneous.
It is certain that the highest degree of skill is not necessary. The surgeon undertakes for a due and proper degree of skill and diligence in his profession, and for the employment of these, he is entitled to a reasonable compensation. His right to recover does not depend upon the fortune of the case, whether it be good or bad, but upon the skill, diligence and attention bestowed. On the contrary, if the patient suffer injury, by reason of the want of skill or diligence in the operation or treatment, or from such cause, derive no benefit therefrom, in either case, the surgeon is not entitled to any compensation, but is liable in damages for the mal-treatment and the negligence. The same may be said of other professions and vocations in which skill and diligence are required. Leare vs. Prentice, 8 East, 350. Duncan vs. *71 Blundell, 3 Stark. R., 6. 2 Wilson, 359. Chitty on Contracts, 165. Com. on Con. 246.
We think, that the charge of the judge is, in substance, conformable to the rules as we have stated it. For he says: if the operation were so unskilfully performed, as to be of no service to the patient, the surgeon would not have right to recover. It certainly required some degree of skill in anatomy and surgery to perform an operation of the kind, and the success that attended it, though not conclusive, is a circumstance, from which the skill may be inferred. The instruments employed, drawn from other vocations, not the most congenial for the special occasion, were certainly unusual and extraordinary for such a purpose. But we are not to infer from this circumstance alone, that the surgeons had not sufficient-art and skill in the use of them. Besides, it is possible that the delay necessary to. procure proper instruments might have been fatal to the patient.
2. In the next place, it is insisted in defence, that the account on which the plaintiff sues is merged in a higher security, executed for the same demand; and, therefore, that no action can be maintained on the account.
It appears, that said Alder was acting as a general agent for said McLain, and on the 11th November, 1842, he executed, in the name of McLain, a bill single for fifty dollars to the'plaintiff, the amount of his bill. The plaintiff assigned this obligation to one Robert Lindsey, and suit being brought thereon, against said Alder, who had become the administrator of said McLain, who was now deceased, — the defendant pleaded informally a special non est factum, — that he was not authorised by any power, under seal, to execute said bill single, for and in the name of said McLain. No power being produced, the judgment was in favor of the plea; and thereon that suit was abandoned, and the present suit instituted upon the original account" And now the defendant objects, that *72 no action can be maintained on the account, for that it is extinguished and merged in a higher security, the bill single, which, as he now insists, he had ample power and authority to execute; and he produces in proof the power on which he relies.
The defence was disallowed, — the judge stating to the jury, that although the plea may not be a legal and technical es-toppel, yet, the defence attempted to be made would be an act of fraud and bad faith, which the law could not permit. In this we see no error. To hold otherwise, would be to abandon the justice of the case, to a misapplication of technical rules.
But we do not think, that the power produced would au-thorise the execution of the bill single. It contains this clause, to wit: “Said McLain doth give the said Alder liberty to sign or assign his name to any note or other instrument of writing.” The word note does not imply an instrument under seal, and the power does not provide that the “other instrument of writing” may be under seal. Nor is it fair to suppose, that by these latter words, money securities, as bills single, bonds, &c., were intended, as the agent was empowered to execute notes for such purposes. The seal is a material part of the security in question, it being, in a legal sense, in the nature of a deed — “a writing sealed and delivered.”
Strictly, the agent had no power to execute the bill single, and it did not bind his principal. It was competent, therefore, to abandon it, and sue on the original account. And although it be probably true, that the agent, for want of power to bind his principal, may have bound himself, yet that would not, of itself, exonerate the principal from his original liability. To have this effect, the agent must not only be liable on the contract or security in question, but the creditor must consent to accept his liability in lieu of that of his principal. Nor do we undertake to say, as it is not material to the present case, *73 that the creditor may not hold the liability of the agent so contracted as cumulative to that of his principal.
3. Nor can we concur in the next position assumed in de-fence: — That it must appear that ■ the plaintiff had cancelled his contract with Lindsey, to whom the bill single was assigned, in order to entitle himself to bring the present action.
We have seen that it was competent for the plaintiff to regard the bill single as a nullity, for the want of power in the agent to execute it, and to sue upon the original account. Lindsey could have no legal interest in the account, it not being, in any legal sense, negotiable or assignable. The action upon it, must necessarily be in the . name of the legal owner; and it is not error, in the suit at law, to omit to show how the equities have been adjusted, if any exist, between those parties. Such inquiry would be altogether irrelevant to the matter in issue.
There is no error in the record, and the judgment will be affirmed.